UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STANLEY and BETTY PELLETZ, by themselves and on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>WEYERHAEUSER COMPANY and ADVANCED ENVIRONMENTAL RECYCLING TECHNOLOGIES, INC.,<br><br>        Defendants. | NO. C08-0334 JCC |
| JOSEPH JAMRUK, STACEY JAMRUK, MICHAEL MUSTAC, and GREG KNUDTSON, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>ADVANCED ENVIRONMENTAL RECYCLING TECHNOLOGIES, INC., a Delaware corporation; WEYERHAEUSER COMPANY, a Washington corporation,<br><br>        Defendants. | NO. C08-0403 JCC<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND DISMISSING CLASS ACTION WITH PREJUDICE**<br><br>Date:      January 8, 2009<br>Time:      9:00 a.m.<br>Courtroom: 16206<br>Judge:    John C. Coughenour |

This matter comes before the Court on Plaintiffs' Motion for Final Approval of the Class Action Settlement (Dkt. No. 120). The Court has carefully considered the motion and all declarations and exhibits filed in support of the motion as well as the balance of the record in this case, including the arguments presented in Court at the fairness hearing on January 8, 2009. The Court hereby finds and rules as follows.

## I. BACKGROUND

This case consolidates two putative class action lawsuits (the "*Pelletz*" case, C08-0334-JCC, and the "*Jamruk*" case, C08-0403-JCC) against Defendants Weyerhaeuser Company and Advanced Environmental Technologies, Inc. ("AERT") for allegedly defective deck-building products. The product at issue, ChoiceDek, is composed of a blend of plastics and recycled wood fibers. (Consolidated Master Am. Compl. ¶ 6.1 (Dkt. No. 25 at 5).) Plaintiffs allege that a defect in ChoiceDek decking and railing products manufactured between January 1, 2004, and October 1, 2006, results in fungal, mold, or mildew growth that causes extensive permanent discoloration that is not discernibly more prevalent in any particular geographical region. (*Id.* ¶¶ 6.3, 6.8.) Plaintiffs allege that Defendants knew about the defect but concealed it from consumers. (*Id.* ¶ 1.3.) Plaintiffs contend that despite knowing of this defect, Defendants marketed ChoiceDek as "virtually maintenance free" and charged a premium for this benefit. (Mot. 2 (Dkt. No. 120 at 8).)

The named Plaintiffs are residents of Florida, Illinois, New Jersey, and Washington, each of whom purchased and installed the ChoiceDek product only to find significant mold spotting on their deck within a relatively short period of time. (Consolidated Master Am. Compl. ¶¶ 2.1–2.4 (Dkt. No. 25 at 2–3).) The problems Plaintiffs encountered were allegedly not remediable by

reasonable cleaning methods. (*Id*.) As such, the named Plaintiffs ultimately contacted counsel, who initiated extensive investigation on ChoiceDek decks around the country and obtained expert evaluation of Plaintiffs' claims against AERT and Weyerhaeuser Company. Settlement discussions began soon after the Jamruks' counsel contacted Defendants in 2007. (Mot. 1 (Dkt. No. 120 at 7).) Beginning in March 2008, the Pelletzes' counsel joined the Jamruks' counsel in completing settlement negotiations with Defendants. (*Id*.) In the meantime, the named Plaintiffs filed class action complaints in this Court against Defendants, first separately and then as a consolidated action. (Consolidated Master Amended Class Action Compl. (Dkt. No. 25).) By the end of summer 2008, however, the parties had reached a settlement and filed the Settlement Agreement with this Court for preliminary approval on August 21, 2008. (Settlement Agreement (Dkt. No. 40-2); Addendum (Dkt. No. 186-2) (correcting a typo).)

On September 15, 2008, the Court issued an order preliminarily certifying a class for settlement purposes, appointing lead counsel for the class, directing the issuance of notice to the class, and scheduling a fairness hearing. (Dkt. No. 50.) The parties selected The Garden City Group, Inc. to serve as the Class Notice Administrator to effectuate notice to the potential class members. (Keough Aff. ¶ 2 (Dkt. No. 136 at 2).) Because the exclusive retailer of ChoiceDek products, Lowe's HIW, Inc., had comprehensive customer records, the parties were able to mail 387,214 class notices to notify the approximately 110,000 to 140,000 class members. Of those notices, only 13,131 were returned as undeliverable with no forwarding address. (Supplemental Keough Aff. ¶ 3 (Dkt. No. 174 at 2–3).) In addition, a class notice was published in the weekend edition of *USA Today* on November 7, 2008. (Keough Aff. ¶ 10 (Dkt. No. 136 at 8).) AERT also made a website available online. (*Id*.) A toll-free number was established to assist potential class members with questions. (*Id*. at ¶¶ 10–11.) The parties issued a joint press release. (*Id*. at ¶ 12.)

Finally, the parties complied with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, with regard to notifying the appropriate state and federal officials of the proposed settlement. (*Id.* at ¶ 13.)

The class notice notified potential class members of a December 15, 2008, deadline by which class members could file objections or opt out of the proposed class settlement. (Notice (Dkt. No. 136 at 11).) By that date, only ninety-one potential class members opted out and only three class members objected to the settlement. (Pls.' Mem. 1 (Dkt. No. 173 at 4).) One objector, Mr. Ted Volin, appeared at the fairness hearing on January 8, 2009, in support of his previously filed written objection. (Dkt. No. 92.) The parties argued at the hearing that the Court should finally approve the proposed class settlement because it is fair, reasonable, and adequate, and because it was reached as a product of vigorous, arms' length negotiations over the course of many months between competent and experienced counsel. Plaintiffs also ask the Court to grant their motion for attorney's fees, which the Court will address in a separate order.

## II. ANALYSIS

The Court approves the following, which is based on both Plaintiffs' counsel's proposed order and the Court's own reasoning.

1.      Incorporation of Defined Terms.  Except where otherwise noted, all capitalized terms used in this Final Order Approving Class Action Settlement and Dismissing Class Action with Prejudice (the "Final Order and Judgment") shall have the meanings set forth in the Settlement Agreement and Addendum, which are incorporated by reference hereto. The Settlement Agreement and Addendum are expressly incorporated by reference into this Final Order and Judgment and made a part hereof for all purposes. The Settlement Agreement is

attached as Appendix B. The Addendum is attached as Appendix C. For the remainder of this Final Order and Judgment, the Settlement Agreement and Addendum are collectively referred to as the "Settlement Agreement."

2.     Jurisdiction.   The Court has personal jurisdiction over the parties and all Class Members, and has subject-matter jurisdiction over this action, including, without limitation, jurisdiction to approve the proposed settlement, to grant final certification of the Class, to settle and release all claims arising out of the transactions alleged in the Plaintiffs' consolidated complaint, and to dismiss this action on the merits and with prejudice.

3.     Final Class Certification.   The Court finds that the requirements for class certification, for settlement purposes only, are met in the instant case. The Federal Rules require (1) numerosity, (2) commonality, (3) typicality, and (4) representivity before a class may be certified. FED. R. CIV. P. 23(a). In addition, the putative class action must fit one of the scenarios described in Rule 23(b). Here, numerosity is satisfied because the parties estimate that the Class consists of between 110,000 and 140,000 ChoiceDek deck owners. Additionally, Plaintiffs' counsel has been contacted by approximately 900 potential Class members. Therefore, the Class is so numerous that joinder of all the members would be impracticable. Second, commonality exists because all Class members allegedly share the same problem: a defect in their ChoiceDek product causing significant recurring molding problems on their decks. Common questions include whether the product is defective, whether Defendants knew or should have known of the defect, and whether Defendants made material misrepresentations in ChoiceDek marketing materials. Typicality is present because the named Plaintiffs and the Class members share the same claims based on Defendants' sale of a product with an allegedly known defect. Representivity exists in that the named Plaintiffs and the Class are represented by qualified and

competent counsel who fairly and adequately represent the interests of the Class. The named Plaintiffs' interests do not conflict with the interests of the Class, as they share the same injury, seek the same relief, and have demonstrated a willingness to represent the Class by participating in the investigation and the settlement process.

Finally, the Court finds that the questions of law and fact common to the Class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Among other things, the fact that Defendant AERT is not aware of any other litigation on this subject matter pursued by potential Class members since the instant class action was filed supports this finding. In addition, since the parties have already reached a settlement, management issues do not present a difficulty. Rather, class treatment here, in the context of the settlement, will facilitate the favorable resolution of all Class members' claims. The Claims Resolution Process will identify and resolve complaints without burdening the courts or the regulators and will result in the cleaning or replacement of Class members' decks.

Accordingly, the Class this Court previously preliminarily certified in its Preliminary Approval Order is hereby finally certified for settlement purposes under Fed. R. Civ. P. 23(b)(3). The Class consists of:

> All persons and entities who own decks constructed of Product originally purchased on or after January 1, 2004, and before January 1, 2008, and additionally persons and entities who own decks constructed of Product originally purchased after December 31, 2007, and can establish that the Product was manufactured between January 1, 2004, and October 1, 2006, using the manufacture date stamped into the end of the Product. Included within the Class are the legal representatives, heirs, successors in interest, transferees and assigns of all such foregoing holders and/or owners, immediate and remote, who currently own decks constructed of Product originally purchased on or after January 1, 2004, and before January 1, 2008 (the "Class").

Notwithstanding the foregoing, the following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof. In addition, notwithstanding the foregoing, all claims for personal injury and wrongful death are excluded from the Class.

A list of those persons who have timely excluded themselves from the Class, and who therefore are not bound by this Final Order and Judgment, is attached hereto as Appendix A, which is incorporated herein and made a part hereof for all purposes.

4.     Adequacy of Representation. The Court appoints Stanley Pelletz, Betty Pelletz, Joseph Jamruk, Stacey Jamruk, Michael Mustac, and Greg Knudtson to serve as Class Representatives. The Court appoints Tousley Brain Stephens PLLC; Lieff Cabraser Heimann & Bernstein, LLP; Goldenberg Heller Antognoli Rowland & Short, P.C.; Hausfeld LLP; Gary, Naegele & Theado, LLC; and Keller Rohrback LLP to serve as Class Counsel. The appointment of Jonathan D. Selbin and Jori Bloom Naegele as Lead Class Counsel for the Class, the appointment of Class Counsel, and the appointment of the Plaintiffs as the Class representatives, is fully and finally confirmed. The Court finds that Lead Class Counsel, Class Counsel, and the Plaintiffs have fully and adequately represented the Class for purposes of entering into and implementing the settlement and have satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

5.     Class Notice. The Court finds that the distribution of the Class Notice and the publication of the Publication Notice in accordance with the terms of the Settlement Agreement and this Court's Preliminary Approval Order, and as explained in the declarations and affidavits filed before the Fairness Hearing:

(a) constituted the best practicable notice to Class Members under the circumstances of this action;

(b) were reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of this class action, (ii) their right to exclude themselves from the Class and the proposed settlement, (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Class's representation by Plaintiffs or Class Counsel, and/or the award of attorneys' and representative fees), (iv) if they did not exclude themselves from the Class, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense), and (v) the binding effect of the orders and Final Order and Judgment in this action, whether favorable or unfavorable, on all persons who do not request exclusion from the Class;

(c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and

(d) fully satisfied the requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.

The Parties have provided the necessary notice under the Class Action Fairness Act, 28 U.S.C. § 1715.

6.     Final Settlement Approval.    The terms and provisions of the Settlement Agreement, including any and all other amendments, addendums (*see* Dkt. No. 186-2) and exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, the Plaintiffs and the Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law.

In considering whether the Settlement Agreement is fair, adequate, and reasonable, the Court has balanced a number of factors, including: (1) the strength of the Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining the class action throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class members to the proposed settlement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("To survive appellate review, the district court must show it has explored comprehensively all factors."). The Court is also mindful that "although 'strong judicial policy . . . favors settlements,' *see Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), the settlement may not be the product of collusion among the negotiating parties." *Churchill Vill., LLC v. GE*, 361 F.3d 566, 576 (9th Cir. 2004).

The Court finds that the Settlement Agreement is fair, adequate and reasonable.  As a preliminary matter, the Court finds no evidence of fraud or collusion underlying this settlement. It was reached after good faith, arms-length negotiations that began soon after the Jamruks' counsel contacted Defendants in 2007 and ended in the August 2008 Settlement Agreement. Both Plaintiffs' counsel and Defendants' counsel represented to this Court at the fairness hearing

that the negotiations were in good faith, and the Court found these representations to be credible. In addition, the Court has considered the following factors:

(a) The strength of the Plaintiffs' case: The Court finds that the strength of Plaintiffs' case supports approval of the class settlement. Defendants argue that mold and mildew can grow on any item left outdoors. (AERT Answer ¶ 6.3 (Dkt. No. 29 at 4).) Without reaching the actual merits of Plaintiffs' case, the Court is not convinced that Plaintiffs' case is so strong that its bargaining position should have resulted in a more generous benefit for the Class.

(b) The risk, expense, complexity, and likely duration of further litigation: Again, the Court is not convinced that Plaintiffs' case is so strong that the inherent risks of trying the case before a jury would have been obviated. In addition, pursuing trial would have delayed the distribution of any benefits to the Class and would likely have incurred far more expenses. Further, the settlement ensures recovery for the Class by taking into account Defendant AERT's financial condition, as the company apparently has cash flow limitations. The settlement is designed to work within those limitations.

(c) The risk of maintaining the class action throughout the trial: The Court finds that the risk of maintaining the class action throughout the trial was probably minimal; however, the balance of these factors favors approval, and the Court is not persuaded that this factor alone militates a different result.

(d) The amount offered in settlement: The settlement provides substantial relief to the Class members, summarized as follows. For Class members whose decks exhibit "Significant Mold Spotting," (which is determined by an

analysis of photographs submitted by the Class member) and who agree to allow AERT to inspect their deck and take a small sample for testing will receive one free cleaning and the application of a mold inhibitor. Whether or not the Class member is entitled to further relief depends upon whether mold returns within 18 months. If it does not return, then the Class member is not entitled to further relief, but their rights under the original warranty are preserved except for those relating to claims arising from mold. This is because the Class member will then have what he or she paid for: a deck without significant mold spotting.

If the mold returns within 18 months, then the Class member has two options. First, she or he can choose to have the deck tested. If the sample does not meet a minimum plastic percentage requirement, then the claimant is entitled to 100% cash reimbursement of the purchase price, new ChoiceDek material for the construction of a new deck, or three additional annual cleanings along with mold inhibitor applications. Second, the Class member has the option of obtaining various levels of relief depending on four factors designed to assess the severity of the problem. If, after an initial cleaning and mold inhibitor application, the mold returns within six months, and the boards were properly gapped, the claimant periodically cleaned the deck as recommended in the past, and the claimant continued to clean the deck periodically after the initial cleaning by AERT, then the claimant is entitled to a 100% reimbursement or three additional annual cleanings and inhibitor applications. If the mold returns within six and eighteen months, the claimant

is eligible for a combination of rebate vouchers, additional cleanings, and/or coupons for deck cleanings. In addition, Defendants are required to discontinue advertising the product as maintenance-free, are required to maintain a Customer Service Hotline to answer questions regarding maintenance, and AERT is required to provide maintenance information on its website. The Court finds that these benefits are adequate, fair, and reasonable to the Class members.

(e) The extent of discovery completed and the stage of the proceedings: Although formal discovery was not completed in this case, the parties engaged in extensive investigation of Plaintiffs' claims, including the lab testing of fourteen decks around the country. The parties exchanged expert reports of a mycologist and a wood scientist and lab analyses of the samples. Plaintiffs' counsel received confidential, proprietary information on ChoiceDek product formulation. Additionally, Plaintiffs' counsel was in contact with over 900 absent Class members and gathered detailed information from almost 500 of them about their experiences and problems with the ChoiceDek product. By the time the settlement was reached, the parties had discovered sufficient information to determine the relative strengths and weaknesses of their respective positions. Both sides were well-prepared to reach an adequate settlement and decide on appropriate remedies based on the strengths and weaknesses of their bargaining positions ascertained during the investigation.

(f) The experience and views of counsel: Class counsel are highly experienced in class action litigation, as supported by their declarations and the exhibits

attached thereto. The fact that they view the settlement as fair, reasonable, and adequate supports the Court's finding the same.

(g)  The presence of a governmental participant: The Court has considered the fact that no governmental agent has responded to the proposed settlement, despite the class settlement notifications sent to the appropriate federal and state officials.

(h)  The reaction of the Class members to the proposed settlement: The positive response to the Settlement by the Class – evidenced by a very small percentage of opt-outs and objections – further supports final approval.  Of the estimated 110,000 to 140,000 Class members, only 119 opted out and only three (3) objected.  *Compare Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming the district court's approval where 45 of 90,000 notified Class members objected to the settlement, and 500 Class members opted out of the settlement). Plaintiffs' counsel represented at the fairness hearing that those who opted out largely did so on grounds that they did not personally have any problems with their ChoiceDek deck, that they thought the relief was inadequate, or that they did not approve of class actions in general. The Court notes that it was not verified that all of those who opted out were actually Class members.

The Court has considered the objections of Ted Volin (Docket No. 92), Kevin and Karilee Olsen (Docket No. 147), and Lane Downs (Docket No. 148), and hereby overrules them.  The three objectors generally argue that the Settlement could have been better by providing different or additional relief,

or by utilizing a different claims procedure. However, as the Ninth Circuit has made clear, the Court's inquiry "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The Court finds that the Settlement meets this standard.

Mr. Volin installed a 998-square-foot ChoiceDek deck in 2006 at his home on Vashon Island, Washington. (Dkt. No. 92.) He seems to take the position that this action should be dismissed because homeowners can simply clean their decks periodically with aggressive, environmentally friendly techniques, such as using a pressure-washer, which he used to good effect. He also argues that the claim forms and photographic proof required for compensation are too complicated and time-consuming for the average homeowner to complete. In addition, he complains that there is no provision in the settlement for recovering the labor cost of the initial installation of the deck.

However, the Court finds that the claims process is reasonable, as it only requires that Class members answer two reasonable claim forms and submit a total of 10 photographs of the mold spotting. This is far less than the Class members would have to produce in order to pursue individual litigation of their claims. Also, if the photographs are not adequate or the claimant fails to provide other requested information, AERT will notify the claimant and ask that they supplement their claim. There is a toll-free number established to assist with claims. In addition, the Court finds that the Settlement benefits – which include full materials costs reimbursement or full replacement material

under certain circumstances – are fair and reasonable in light of the parties' claims and defenses. Labor costs would have been a hotly contested issue, since the express warranty does not provide for labor and since the product does not completely fail but merely requires allegedly unreasonable maintenance efforts. For these reasons, Mr. Volin's objection is overruled.

The Olsens purchased ChoiceDek decking materials based on Defendants' representations that the materials had a longer warranty period and that the materials would be maintenance free. (Dkt. No. 147.) They object to the settlement on grounds that it is not fair to completely release Defendants from any claims the Olsens may have against them and on grounds that the settlement benefits are inadequate. However, Class members retain their rights under the original warranty, except for mold issues (unless personal injury or wrongful death is alleged). Therefore, the Court finds that the scope of the release is appropriate. If Class members did not want to agree to this release, they were free to opt out of the settlement. In addition, under the settlement, the Olsens may be entitled to a full replacement or full cash refund if their deck meets certain requirements. Therefore, it is not clear to the Court that the settlement benefits are inadequate as to the Olsens or as to any Class members.

Finally, Mr. Downs spent over $6,000 for his ChoiceDek deck. He argues that labor to remove and replace the boards will cost over $5,200. He asks rhetorically, "Why would I want an offer to clean and apply a mold inhibitor to my supposed low maintenance deck?" and further queries why relief is

dependent on the efficacy of the mold inhibitor. He also argues that it is onerous to have to show proof of cleaning history, especially when the deck was supposed to have been maintenance-free.

The Court finds that, for reasons stated above, it is reasonable for the settlement benefits not to include the cost of labor. In addition, the Court finds the rationale for the remedies system to be reasonable: if the deck fails to develop mold after a cleaning and application of a mold inhibitor, then the Class member essentially has what he paid for—that is, a deck that can be kept clean with reasonable maintenance. Apparently, AERT recommended to its customers that they clean their decks twice a year. Therefore, it is reasonable for claimants to have to show some proof of cleaning history. Without such a requirement, AERT would have argued that lack of routine maintenance contributed to mold growth. Plaintiffs' counsel reasonably took this legitimate argument into account when negotiating the settlement. The Court notes that claimants are only required to verify on their claims form that they cleaned their deck twice a year using homemade or commercial cleaners. No receipts or other verification of cleaning is required. (*See* Dkt. Nos. 40-2 at 64, 69.)

Therefore, the Court finds that the cleaning requirement is appropriately included in the claims procedure, given the relevance of this issue to the parties' claims and defenses. The Court also finds that the prior cleaning requirement is included in a fair and reasonable manner, particularly since Class members who do not meet it are still eligible for substantial relief,

including the highest tier of relief under certain circumstances.  The Court has therefore considered and hereby overrules Mr. Downs' objection.

Accordingly, the Court overrules all objections and approves the Settlement as fair, adequate, and reasonable.  The Parties and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

7.      Retention of Arbitrator and Administrator.  The Parties are authorized to appoint an Arbitrator for the Claim Resolution Process in accordance with the terms of the Settlement Agreement.

8.      Binding Effect.  The terms of the Settlement Agreement, and of this Final Order and Judgment shall be forever binding on Plaintiffs and all other Class Members, as well as their heirs, executors and administrators, successors and assigns, and those terms shall have res judicata and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in this action or are otherwise encompassed by the Release described in the next paragraph of this Final Order.

9.      Release.  The Release contained in Section 6 of the Settlement Agreement is expressly incorporated herein in all respects, is effective as of the date of this Final Order and Judgment, and forever discharges the Released Parties from any claims or liabilities arising from or related to this Action.

10.     Permanent Injunction.  All Class Members who have not been timely excluded from the Class are hereby permanently barred and enjoined from (a) filing, commencing, prosecuting, maintaining, intervening in, participating in (as Class members or otherwise), or

receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the matters released in the Release, and (b) organizing or soliciting the participation of any Class Members in a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit or other proceeding based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the matters released in the Release. The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over this action and to protect and effectuate the Court's Final Order and Judgment.

11. **Enforcement of Settlement.** Nothing in this Final Order and Judgment shall preclude any action to enforce the terms of the Settlement Agreement; nor shall anything in this Final Order and Judgment preclude Plaintiffs or Class Members from participating in the Claim Resolution Process described in the Settlement Agreement if they are entitled to do so under the terms of the Settlement Agreement.

12. **Attorneys' and Class Representative's Fees and Expenses.** The Agreement provides for attorneys' fees and reimbursement of their expenses in the amount of $1,750,000.00, and stipends to the Class representatives as follows: $7,500.00 to Joseph and Stacey Jamruk; $7,500.00 to Michael Mustac; $7,500.00 to Greg Knudtson; and $7,500.00 to Stanley and Betty Pelletz. The Court will issue a separate order addressing these fees and stipend requests.

13. **No Other Payments.** The preceding paragraph of this Final Order and Judgment covers, without limitation, any and all claims for attorneys' fees and expenses, representative fees, costs or disbursements incurred by Lead Counsel or any other counsel representing the Plaintiffs or Class Members, or incurred by the Plaintiffs or the Class Members, or any of them, in connection with or related in any manner to this action, the settlement of this action, the administration of such settlement, and/or the matters released in the Release except to the extent otherwise specified in this Final Order and Judgment and the Settlement Agreement. Defendants shall be liable to Plaintiffs and the Class Members for no additional attorneys' fees, representative fees, or expenses. All costs of court are taxed against the parties incurring same.

14. **Retention of Jurisdiction.** The Court has jurisdiction to enter this Final Order and Judgment. Without in any way affecting the finality of this Final Order and Judgment, this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Final Order and Judgment, including, without limitation, for the purpose of:

(a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, and/or this Final Order and Judgment (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred or released by this Final Order and Judgment, etc.);

(b) entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate this Final Order and Judgment and the Settlement

Agreement, or to ensure the fair and orderly administration of the settlement; and

(c) entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction.

15. **No Admissions.** Neither this Final Order and Judgment nor the Settlement Agreement (nor any other document referred to herein, nor any action taken to negotiate, effectuate and implement the settlement) is, may be construed as, or may be used as an admission or concession by or against Defendants as to the validity of any claim or any actual or potential fault, wrongdoing or liability whatsoever. Additionally, neither the Settlement Agreement, nor any negotiations, actions, or proceedings related to them, shall be offered or received in evidence in any action or proceeding against Defendants in any court, administrative agency or other tribunal for any purpose whatsoever, except to enforce the provisions of this Final Order and Judgment and the Settlement Agreement. This Final Order and Judgment and the Settlement Agreement may be filed and used by Defendants or Releasees to support a defense of res judicata, collateral estoppel, estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

Certification shall be automatically vacated and this Order shall become null and void if the Settlement Agreement is disapproved by any appellate court and/or any other court of review, or if any of the Parties invoke their right to terminate their agreement to settle (pursuant to Section 11.4 of the Settlement Agreement), in which event this Order, the Settlement Agreement and the fact that they were entered into shall not be offered, received or construed as an admission or as evidence for any purpose, including the "certifiability" of any class as further

discussed in Section 2 of the Settlement Agreement. The Settlement Agreement itself, actions in conformance with the settlement, and the other documents prepared or executed by any party in negotiating or implementing the settlement called for by the Settlement Agreement, including any of the terms of any such documents, shall not be construed as an admission, waiver or estoppel by Defendants and shall not be offered in evidence in or shared with any party to any civil, criminal or administrative action or proceeding without Defendants express written consent.

16.     Dismissal of Action.   This Action, including all individual and Class claims resolved in it, is hereby dismissed on the merits and with prejudice against Plaintiffs and all other Class Members, without fees or costs to any party except as otherwise provided in this Final Order and Judgment and the Court's separate order regarding attorneys' fees and costs and Class representative stipends.

17.     Final Judgment.   This is a Final Judgment disposing of all claims and all parties.

SIGNED this 9th day of January, 2009.


_____
JOHN C. COUGHENOUR
UNITED STATES DISTRICT JUDGE

# APPENDIX A

## LIST OF OPT-OUTS EXCLUDED FROM THE CLASS

**Case Nos. 08-0334 and 08-0403 (W.D. Wash.)**
**Appendix A: Final List of Opt Outs**

| Name | Date Filed | Docket No. | State |
|---|---|---|---|
| Amico, Eric | 12/4/2008 | 119 | VA |
| Anheuser Busch Companies | 12/23/2008 | 170 | MO |
| Atkins, Thomas A. | 11/21/2008 | 101 | CO |
| Banks, Larry | 10/27/2008 | 54 | AL |
| Bergeron, Barbara F. | 12/8/2008 | 142 | TX |
| Bestic, Daniel | 12/15/2008 | 156 | OH |
| Blankenship, Cindy | 12/8/2008 | 140 | VA |
| Blankenship, Michael | 12/8/2008 | 140 | VA |
| Bowen, Brian T. | 12/4/2008 | 117 | SC |
| Brockman, Brian J. | 11/10/2008 | 83 | NE |
| Burgin, Janice C. | 12/8/2008 | 144 | GA |
| Castro, Paul D. | 10/28/2008 | 61 | NV |
| Clemmer, Michael J. (Esq.) | 12/15/2008 | 155 | AL |
| Comkornruecha, Prachak | 12/15/2008 | 154 | TN |
| Daly, Jacqueline | 11/10/2008 | 82 | CO |
| Davis, Wallace E. | 12/5/2008 | 139 | OH |
| Dilbert, Robert | 12/3/2008 | 115 | OH |
| Dipert, Robert M. | 11/25/2008 | 106 | OH |
| Dipert, Virginia L. | 11/25/2008 | 106 | OH |
| Dominey, Margaret B. | 12/15/2008 | 157 | GA |
| Dominey, Samuel S. | 12/15/2008 | 157 | GA |
| Dunwoody, Kay | 10/31/2008 | 72 | PA |
| Dunwoody, Scott | 10/31/2008 | 72 | PA |
| Evans, Barbara | 11/19/2008 | 99 | WA |
| Evans, James | 11/19/2008 | 99 | WA |
| Falls, Charles H. | 11/28/2008 | 109 | VA |
| Faulk, Jack as president on behalf of Jack Faulk Agency, Inc. | 10/29/2008 | 63 | KY |
| Faulk, Jack as president on behalf of JFA Storage Trailers | 10/29/2008 | 63 | KY |
| Faulk, Jack as president on behalf of Star Investments | 10/29/2008 | 63 | KY |

| Name | Date Filed | Docket No. | State |
|---|---|---|---|
| Faulk, Jack as president on behalf of Trailer & Tractor Service, LLC | 10/29/2008 | 63 | KY |
| Faulk, Jack Individually | 10/29/2008 | 63 | KY |
| Finley, Roland | 12/23/2008 | 169 | AL |
| Fischer, Jack | 10/31/2008 | 68 | UT |
| Fitz, Joyce | 11/28/2008 | 108 | PA |
| Fitz, Robert | 11/28/2008 | 108 | PA |
| Friel, Thomas P. | 11/21/2008 | 100 | VA |
| Garrison, Sheryl | 11/17/2008 | 87 | OR |
| Gonyea, Lawrence | 11/24/2008 | 102 | NY |
| Goodnight, Eric V. | 11/3/2008 | 73 | IN |
| Hankes, Ann | 12/2/2008 | 113 | NV |
| Hankes, Donald | 12/2/2008 | 113 | NV |
| Harris, Daryl | 12/22/2008 | 166 | FL |
| Henderson, James | 11/20/2008 | 98 | TN |
| Henderson, Richard L. | 10/27/2008 | 60 | MO |
| Henige, Ronald A. | 11/17/2008 | 90 | MI |
| Hofmeister, Rod | 11/20/2008 | 97 | AK |
| Hollingsworth, George | 11/14/2008 | 86 | TX |
| Holmes, Martin D. | 12/12/2008 | 152 | TN |
| Holmes, Patricia | 12/12/2008 | 152 | TN |
| Holt, Russel C. | 12/9/2008 | 149 | VA |
| Howard, Fred | 12/15/2008 | 163 | SC |
| Howe, Bill | 11/6/2008 | 77 | AZ |
| Hutchens, Jill for McCart, James (deceased) | 11/3/2008 | 79 | IN |
| Jeffs, Lois | 10/31/2008 | 69 | UT |
| Johnson, Donald | 12/8/2008 | 145 | WI |
| Julian, Philip W on behalf of Julian Enterprises | 11/17/2008 | 91 | VA |
| Julian, Phillip W. | 11/17/2008 | 91 | VA |
| Kidder, Scott | 12/11/2008 | 151 | ME |
| Kingsfield, Richard | 12/15/2008 | 159 | IL |
| Kingsfield, Richard on behalf of Ric's Heating & Cooling | 12/15/2008 | 159 | IL |
| Kingsfield, Susan | 12/15/2008 | 159 | IL |

| Name | Date Filed | Docket No. | State |
|---|---|---|---|
| Kluth, William G. | 11/17/2008 | 89 | WV |
| Kuykendall, Barbara | 10/28/2008 | 62 | NC |
| Kuykendall, Daniel | 10/28/2008 | 62 | NC |
| Lee, Beverly | 12/15/2008 | 164 | OH |
| Lee, Bob | 12/15/2008 | 164 | OH |
| Mackey, Terri | 12/15/2008 | 162 | FL |
| McCann, Madelein C. | 12/22/2008 | 168 | FL |
| McCann, Thomas J. | 12/22/2008 | 168 | FL |
| McCoy, Kenneth | 12/4/2008 | 118 | NV |
| McCoy, Peggy | 12/4/2008 | 118 | NV |
| Mitch, Clair | 12/3/2008 | 116 | PA |
| Mitchell, Elmer Jr. | 10/30/2008 | 66 | WV |
| Mosher, Daniel | 10/31/2008 | 71 | CA |
| Murphy, Mark | 10/23/2008 | 53 | NY |
| Nolan, Ronald | 10/30/2008 | 65 | CO |
| Olsen, Blaine | 12/3/2008 | 114 | ND |
| Pelton, Doris | 11/28/2008 | 110 | TX |
| Petrlik, Frank | 11/10/2008 | 81 | WV |
| Pfleiderer, John A. | 12/22/2008 | 167 | CO |
| Porter, Brown Jr. | 11/5/2008 | 75 | TN |
| Pricone, Thomas | 10/31/2008 | 70 | CO |
| Pruitte, Linda J. | 11/24/2008 | 105 | TN |
| Pucci, Erminia | 12/8/2008 | 143 | PA |
| Pucci, Robert | 12/8/2008 | 143 | PA |
| Quitiquit, Ray | 12/2/2008 | 112 | CA |
| Rich, Gerald G. | 12/22/2008 | 171 | VA |
| Rinaldi, Yvonne M. | 10/27/2008 | 58 | TX |
| Rock, Raymond J. | 11/24/2008 | 104 | MA |
| Rogers, Donald | 12/8/2008 | 146 | ID |
| Rosner, Michael J. | 12/15/2008 | 161 | OH |
| Rosner, Patricia W. | 12/15/2008 | 161 | OH |
| Saffell, Mike | 10/29/2008 | 64 | KS |
| Schmidt, Kenneth | 10/27/2008 | 56 | OH |
| Schulist, Joseph | 12/15/2008 | 158 | MI |
| Schulist, Joseph on behalf of Joseph Schulist Builders Inc. | 12/15/2008 | 158 | MI |
| Schulist, Nancy | 12/15/2008 | 158 | MI |

| Name | Date Filed | Docket No. | State |
|---|---|---|---|
| Shepard, Paul | 12/1/2008 | 111 | CA |
| Shindo, Makita | 12/8/2008 | 141 | CT |
| Small, Jeff | 10/27/2008 | 55 | TX |
| Small, Mary Ann | 10/27/2008 | 55 | TX |
| Sondles, Shelly Barnhart | 11/4/2008 | 74 | OH |
| Steele, Jay A. | 10/27/2008 | 59 | IL |
| Sumner, Richard | 10/30/2008 | 67 | OR |
| Swigart, Mildred A. | 11/24/2008 | 103 | OH |
| Swigart, Walter L. | 11/24/2008 | 103 | OH |
| Trottman, Dennis J. | 11/13/2008 | 85 | NY |
| Urban, Russel J. | 11/6/2008 | 78 | FL |
| Vasquez, Patricia Card | 12/23/2008 | 172 | CA |
| Vasquez, Ruben | 12/23/2008 | 172 | CA |
| Verssue, Bernard | 11/26/2008 | 107 | MO |
| Vickers, Charlene | 11/5/2008 | 76 | IN |
| Vincent, Kerry | 12/9/2008 | n/a | PA |
| Warren, Diane | 12/12/2008 | 153 | CO |
| Whitmore, Barbara | 12/15/2008 | 160 | NJ |
| Whitmore, Richard | 12/15/2008 | 160 | NJ |
| Wieda, George | 11/17/2008 | 88 | OH |
| Wieda, Marianne | 11/17/2008 | 88 | OH |
| Young, Bill | 11/6/2008 | 80 | CA |